NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FISNIK SAPUNXHIU, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION NO. 06-3975 (JLL) |
| | : | |
| MICHAEL MUKASEY, ET AL., | : | **OPINION** |
| | : | |
| Respondents. | : | |

**LINARES**, District Judge.

This case is presently before the court by way of Petitioner Fisnik Sapunxhiu's ("Petitioner" or "Sapunxhiu") verified complaint and petition for habeas corpus pursuant to 28 U.S.C. § 2241 (the "petition"). Petitioner is currently detained at Elizabeth Detention Facility in Elizabeth, New Jersey under 8 U.S.C. § 1231. The Court heard oral argument on January 30, 2008 and has reviewed the submissions of the parties. For the reasons set forth below, the Court dismisses the petition.

**I.    Factual History**

Petitioner is an ethnic Albanian who lived in, and is a citizen of, the Kosovo region of the former Yugoslavia. (Pet. at ¶ 8.) During Petitioner's residence there, the Serbian-controlled government perpetrated an extended period of ethnic cleansing against the Albanian population. Id. On May 22, 1999, Petitioner endured a surprise robbery of his family's home, an assault on him and his parents, and a gang rape of his sister by multiple Serbian officers. (IJ Op. (May 16,

1

2002) at 4.)[1] Petitioner and his family fled to Albania and remained there until July 1999 when they returned to Kosova only to find their home completely destroyed. (Id. at 4-5.) Petitioner entered the United States on August 7, 2001 on a J-1 student visa. (Resps. Answer at 2.) His visa expired on approximately May 23, 2002 when he completed his schooling. (Id.)

## II.  Procedural History

The procedural history of this case is a tortured one. On July 22, 2002, Petitioner filed an application for asylum and withholding of removal based on race and nationality. The asylum officer with whom Petitioner had an interview and assessment denied Sapunxhiu's application on the ground Sapunxhiu no longer faced a threat of persecution if returned to Kosovo. The officer thus referred the case to an Immigration Judge ("IJ"). Immigrations and Customs Enforcement ("ICE") issued Petitioner a Notice to Appear on October 8, 2002, charging him with overstaying the term of his visa. In proceedings before the IJ, Petitioner conceded removability. After a hearing on the merits, the IJ issued an oral opinion in which she found that (1) Petitioner had indeed suffered past persecution in the former Yugoslavia, (2) there was a change in country conditions sufficient to rendered null his fear of future persecution, and (3) his post-traumatic stress disorder ("PTSD") constituted a "compelling reason" for Petitioner being unwilling or unable to return to his home country. (IJ Op. (May 16, 2003).) The IJ determined that discretionary relief was warranted and therefore, granted Petitioner's application for asylum and

---

[1] Various opinions have been issued in this case by various courts. The decision of the Immigration Judge ("IJ") is referred to as "IJ Op."; of the BIA, the "BIA Op."; and of the Third Circuit, "Op." Copies of all opinions in this case are attached to the petition.

withholding of removal.[2] The Immigration and Naturalization Service ("INS") appealed to the Board of Immigration Appeals ("BIA").

The BIA issued a three-page, one-judge per curium opinion, reversing the IJ's grant of asylum and withholding of removal. The BIA agreed that Petitioner had suffered past persecution and that the country conditions had changed, but ultimately concluded that Petitioner's PTSD did not amount to a "compelling reason" sufficient under its precedent to warrant discretionary relief. (BIA Op. at 3.) In its order, the BIA granted Petitioner voluntary departure in lieu of removal; the order also contained a provision that converted the order into an order of removal upon Petitioner's failure to voluntarily depart. (Id.) Petitioner appealed the decision and order to the Third Circuit.[3]

In its September 14, 2005 opinion, the Third Circuit affirmed the BIA's decision. On appeal, Sapunxhiu made three arguments to the Third Circuit: that the BIA did not (1) follow its established precedent regarding whether an alien must face a permanent disability from past persecution; (2) provide a rational explanation as to why Sapunxhiu's past persecution did not warrant a "humanitarian grant of asylum"; and (3) consider discretionary factors that would merit

---

[2] The IJ wished to grant Petitioner both asylum and withholding of removal in May 2003, but found that because Petitioner had not undergone a number of administrative procedures, *i.e.*, record and database checks, she could only grant withholding of removal at that time. Upon agreement of the parties, the proceedings were adjourned so that Petitioner could undertake these processes. Once the procedures were completed, the IJ officially granted Petitioner's application for asylum. (IJ Op. (June 12, 2003) at 1.)

[3] It is significant to note that Petitioner did not take any steps to obtain an extension of the period of voluntary departure. (Tr. (Jan. 30, 2008) at 15:25-16:8.) Instead, the time period for voluntary departure lapsed and the BIA's order converted into an order of removal. In leaving under these terms, Petitioner is barred from reentering the United States for a period of ten (10) years. (Id. at 6:19-6:21.) Had he departed voluntarily, he could have reentered the country on a separate visa. (Id.)

3

a favorable outcome of Sapunxhiu's claim. (Op. (Sept. 14, 2005) at 5-6.) The Third Circuit found that Petitioner's arguments were without merit and affirmed what it called a "final order issued by the [BIA]," (id. at 2), stating that "although we may have decided this case differently, we are bound to uphold the BIA's decision," (id. at 7). At that time, Petitioner did not appeal the argument currently at issue--that the BIA does not have authority to enter an order of removal.

On May 8, 2006, Petitioner reported to the deportation office which determined that he had failed to depart in accordance with the BIA's order.[4] Based on this lapse, ICE took Petitioner into custody. Petitioner filed the instant verified complaint and petition for habeas corpus on August 21, 2006, challenging his detention under 8 U.S.C. § 1231.

On September 28, 2006, Petitioner filed an Order to Show Cause, asking the Court to stay his deportation, scheduled for the following day, and requesting Respondents to show cause why his petition should not be granted. The Court granted the stay and issued an order requiring Petitioner to show why the case should not be dismissed or transferred according to the Real ID Act, 8 U.S.C. §1252, and Respondents to show why Petitioner should not be accorded habeas relief. The Court granted the parties' request for a continuation of the briefing and hearing schedule through November 20, 2006 while the parties tried to resolve the case. On November 15, 2006, the parties entered a stipulation to suspend the case so that counsel for Petitioner could attempt to re-open the administrative proceedings. Unfortunately, neither of these avenues was successful.[5]

---

[4] Petitioner had begun reporting to ICE periodically after the BIA rendered its decision. (See Tr. (Jan. 30, 2008) at 16:11-17:3.)

[5] Petitioner's counsel explained that despite ICE's agreement not to oppose her motion to re-open the file in front of the BIA, she refrained from filing said motion because, according to

4

The parties finally reactivated proceedings before this Court in October 2007.[6] In his petition, Sapunxhiu challenges his detention in violation of his Fifth and Eighth Amendment rights under the Constitution. (See Pet. at ¶ 14.) He claims that 8 U.S.C. § 1231(a) does not apply to him as he is not yet subject to a final order of removal as defined by 8 U.S.C. § 1101(a)(42)(A). (See Br. in Support of Pet. at 2-3.) According to the petition, when the BIA reversed the IJ's grant of asylum and withholding of removal, it should have remanded the case to the IJ to issue a final order of removal. (Pet. at ¶ 12.) Petitioner asserts that the BIA's grant was *ultra vires* and thus, invalid. Id., id. at ¶ 2. Respondents, on the other hand, assert that there is a final order of removal in place against Petitioner based on the procedural history of the case and consequently, (1) Petitioner's detention is lawful and (2) this Court is without jurisdiction to entertain the petition under the terms of the Real ID Act of 2005. (Resps. Answer at 8-12, 16.) Petitioner maintains that the IJ never made a finding of removability that the BIA could affirm as a final removal order. Without a final order of removal in place, the petition may proceed before this Court. See Br. in Support of Pet. at p. 6. These arguments make clear that the Court's authority to adjudicate the petition turns on whether or not there is indeed a final order of removal against Petitioner. The Court will now address the threshold jurisdictional issue.

---

her research, it is infeasible to reopen a case before the BIA for remand to the IJ. (Tr. (Jan. 30, 2008) at 8:16-8:21.)

[6] Given that the Court had not received a status report from the parties after repeated requests, on September 24, 2007 it issued an Order to Show Cause why the case should not be dismissed pursuant to L. R. Civ. R. 41.1 for lack of prosecution. The reactivation of the proceedings followed the Court's order.

### III. Discussion

#### A. Jurisdiction Pursuant to the REAL ID Act

The Real ID Act of 2005 specifies that

> [j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order. . . . [N]o court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] . . . to review such an order of such question of law or fact.

8 U.S.C. § 1252(b)(9). Thus, the Real ID Act strips the district courts of jurisdiction to hear petitions challenging final orders of removal; rather, review of a final order by the court of appeals is the "sole and exclusive means of judicial review for all orders of removal . . . ." 8 U.S.C. § 1252(a)(5); see Bonhometre v. Gonzales, 414 F.3d 442, 445 (3d Cir. 2005). Nevertheless, districts courts may hear a habeas petition in which the alien challenges the existence of a removal order and not an existing order of removal. See Kumarasamy v. Attorney Gen., 453 F.3d 169, 172 (3d Cir. 2006). Where the alien files a "mixed petition" for habeas relief, in which the challenge to his detention is "grounded in the removal order rather than based on some inherent problem with the detention itself," the petition is subject to the Real ID Act and may not be heard by the district court. Essuman v. Gonzales, 203 Fed. Appx. 204, 211 (10th Cir. 2006).

An order of removal issues when there is an "order of a special inquiry officer . . . concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A).[7]

---

[7] In deportation proceedings, the Immigration Judge ("IJ") is the "special inquiry officer," 8 C.F.R. § 244(a)(1); see Amezquita-Soto v. INS, 708 F.2d 898, 902 n.10 (3d Cir. 1983), and the terms "removable" and "removal" are used interchangeably with "deportable" and "deportation," Avila-Macias v. Ashcroft, 328 F.3d 108, 111-12 (3d Cir. 2003).

Under the statute, the IJ's finding of removability is tantamount to a removal order. Obale v. Attorney Gen., 453 F.3d 151, 160 (3d Cir. 2006) ("[T]he statutory definition of an order of removal encompasses not only orders actually ordering removal but also orders in which an IJ merely determines that an alien is removable . . . ."); see Lazo v. Gonzales, 462 F.3d 53, 54 (2d Cir. 2006) (stating that under 8 U.S.C. § 1101(a)(47)(A), a finding of removability by the IJ is effectively an order of removal). Such an order becomes final "upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." 8 U.S.C. § 1101(a)(47)(B). Thus, the statutory language suggests that where the IJ has made a finding of removability, but not issued a removal order, the BIA may issue a final removal order based on the IJ's finding. Although the Third Circuit has never decided this issue, the Courts of Appeals that have unanimously agree that "where the IJ has previously determined that the alien is removable, but grants [discretionary relief], the BIA's decision to reverse the [relief] reinstates the initial finding of removability, which . . . is effectively an order of removal." Lolong v. Gonzales, 484 F.3d 1173, 1178 (9th Cir. 2007);[8] accord Guevara v. Gonzales, 472 F.3d 972, 976 (7th Cir. 2007);

---

[8] When Petitioner originally filed his petition, he relied on the Ninth Circuit's decisions in Molina-Camacho v. Ashcroft, 393 F.3d 937 (9th Cir. 2004) and Noriega-Lopez v. Ashcroft, 335 F.3d 874 (9th Cir. 2003). Molina-Camacho held there was no final order of removal where the BIA overturned the IJ's grant of discretionary relief after making a finding of an alien's removability. 393 F.3d at 940-41. In Noriega-Lopez, the Ninth Circuit held, *inter alia*, that the BIA does not have the authority to issue an order of removal in the first instance. 335 F.3d at 883 ("Under th[e] statutory scheme, only an IJ . . . may issue orders of deportation. The BIA . . . is restricted to affirming such orders, not issuing them in the first instance"). In Lolong v. Gonzales, the Ninth Circuit, relying on its sister circuits' contrary position, expressly overruled Molina-Camacho, and held that a BIA's decision to reverse a cancellation of removal where the IJ had made a finding of removability constituted a "final order of removal." Lolong, 484 F.3d at 1175. Lolong does not invalidate the above-holding in Noriega-Lopez.

7

Cruz-Camey v. Gonzales, 504 F.3d 28, 29-30 (1st Cir. 2007); Lazo, 462 F.3d at 54 (2d Cir. 2006); Delgado-Reynua v. Gonzales, 450 F.3d 596, 600-1 (5th Cir. 2006); Solano-Chicas v. Gonzales, 440 F.3d 1050, 1054 (8th Cir. 2006); Del Pilar v. Attorney Gen., 326 F.3d 1154, 1155 (11th Cir. 2003).

The fact that the IJ in the case at bar did not make an explicit finding of removability, and merely noted that Petitioner conceded removability, (see IJ Op. (May 16, 2003) at 2), gives the Court pause. Neither party has addressed whether an alien's concession of removability in front of the IJ amounts to a finding of removability. In fact, at oral argument, Petitioner's counsel could not point the Court to a single case stating that an IJ's finding of removability could not be based on an alien's concession. (Tr. (Jan. 30, 2008) at 23:1-23:4.) Respondents only argue that the IJ's grant of discretionary relief "implicitly indicates that the IJ found that Sapunxhiu was subject to removal" and "[t]hus, it is unquestionable that the immigration judge concluded that the petitioner is deportable," (Resps. Br. at 14 (quotations omitted)), but offer no caselaw to support this proposition. Thus, the Court is left with the difficult task of determining whether (a) an IJ's recognition on the record of the alien's concession is considered a finding of removability or (b) a discretionary grant of relief inherently requires the IJ to making a finding of the alien's removability such that a final order of removal exists in this case.

While the Third Circuit has not yet addressed either issue, the Ninth Circuit has. In Muradin v. Gonzales, 494 F.3d 1208 (9th Cir. 2007), the IJ denied petitioner Muradin's applications for asylum and withholding of removal, but granted him relief pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Id. at 1208. The BIA affirmed the IJ's denial of asylum and

8

withholding of removal, but reversed the relief under CAT. Id. Relying on Lolong, the Ninth Circuit found that a final order of removal existed so as to allow it to exercise jurisdiction under the Real ID Act:

> Although the IJ did not enter an order of removal or make an explicit finding of removability, Muradin conceded removability before the IJ. Further, the IJ's grant of relief necessarily requires the IJ to have already determined Muradin is removable. We therefore have jurisdiction to review the BIA's order of removal in this case because it followed an initial determination of removability by the IJ.

Id. at 1209 (emphasis added) (citations omitted); see also Lolong, 484 F.3d at 1178 ("Because Lolong conceded removability and the IJ found that clear and convincing evidence supported a finding of removability, a final order of removal was entered."); Cruz-Camey, 504 F.3d at 29 (finding an final order of removal existed where "[p]etitioner conceded removability, but applied for cancellation of removal . . . [and] the IJ granted the petitioner's application for cancellation of removal").

The Muradin Court's logic is instructive here: like the IJ in Muradin, the IJ here did not make an explicit finding of removability and like Muradin himself, Petitioner conceded removability in front of the IJ. The Ninth Circuit's reasoning in Muradin answers both of the Court's questions: an alien's concession of removability is enough to amount to a finding of removal by the IJ and a grant of discretionary relief like the one here necessitates an inherent finding of removability. Because Petitioner conceded removability before the IJ and because the IJ granted Petitioner asylum and withholding of removal, the IJ made a finding of removability that the BIA could reinstate and make final. Consequently, this Court does not have jurisdiction to hear the petition. See 28 U.S.C. § 1252(b)(9).

9

### B. Transfer of the Case

Petitioner has not addressed the possible transfer of this case to the Third Circuit, but Respondents assert that the Court must dismiss the petition–not transfer it–pursuant to the Real ID Act. Resps. Br. at pp. 11-12. Under the Real ID Act, petition for review of a final order of removal must be filed with the appropriate court of appeals no later than thirty (30) days after the order is entered. 8 U.S.C. § 1252(b)(1). Only those habeas petitions pending in district courts at the time the Real ID Act came into effect could be transferred to the appropriate court of appeals. See Bonhometre, 414 F.3d at 446. Petitions challenging final orders of removal filed in district courts after the enactment of the Real ID Act may not be transferred to the appropriate court of appeal and must be dismissed. See Kolkevich v. Attorney General, 501 F.3d 323, 332, 336-37 (3d Cir. 2007) (dismissing habeas petition challenging a removal order entered prior to the Real ID Act, but not brought within the appropriate time period); Wang v. Dep't of Homeland Sec., 484 F.3d 615, 617-18 (2d Cir. 2007) (dismissing habeas petition challenging a final order of removal as untimely under the Real ID Act's transfer provision); Kumar v. Gonzales, No. 07-003, 2007 WL 708628, at *3 (W.D. Mich. March 5, 2007) (dismissing habeas petition governed by the Real ID Act, rather than transferring it, for lack of subject matter jurisdiction). Here, Petitioner filed his habeas petition a year after the passage of the Real ID Act. Because this Court does not have jurisdiction over the petition and because the petition was filed outside the appropriate time period for transfer, the Court will dismiss Sapunxhiu's petition for habeas corpus.

### IV. Conclusion

For the aforementioned reasons, the Court cannot exert jurisdiction over this matter

pursuant the terms of the Real ID Act and therefore, dismisses Petitioner Sapunxhiu's petition for habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate order accompanies this opinion.

Date: February 8th, 2008

Jose L. Linares
United States District Judge